IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN DENISE EDELMAN | : | CIVIL ACTION |
| | : | NO. 10-2589 |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY | : | |

O'NEILL, J.                                                                                                                                               MAY 8, 2012

## MEMORANDUM

Dawn Edelman filed a claim for Social Security disability insurance benefits and supplemental security income. Afer the Commissioner of Social Security denied her claim, Edelman sought judicial review in this Court. I referred this matter to Magistrate Judge Henry S. Perkin, who recommended that I affirm the Commissioner's decision. In response, Edelman filed objections to Judge Perkin's Report and Recommendation. For the reasons that follow, I will overrule Edelman's objections, approve and adopt the Report and Recommendation and affirm the decision of the Commissioner.

## BACKGROUND

I incorporate by reference the factual and procedural history of this matter as set forth in the Report and Recommendation. Briefly, however, Edelman applied for Social Security benefits on December 8, 2006, claiming that her disability began on October 12, 1997. Tr. 115. After a hearing, the ALJ performed the following five-step analysis for determining Edelman's eligibility for Social Security disability benefits:

> inquir[ing], in turn, whether [she]: (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed

>impairment; (4) is able to perform . . . her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

McRea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  The ALJ determined that Edelman was not employed and had "the following severe impairments:  neck and shoulder impairment, anxiety, depression, and (possible) fibromyalgia."  Tr. 11.  The ALJ concluded, however, that Edelman "has the residual functional capacity to perform light work . . . which involves routine one to two step tasks, with no detailed instructions, few work changes, and no exposure to chemicals."  Tr. 13.  The ALJ then determined that Edelman could not perform her previous work as a waitress, but that she could perform jobs that exist in significant numbers in the national economy.  Tr.22-23.  Edelman's claim was therefore denied.  Her subsequent administrative appeal was also denied.

Edelman then appealed the Commissioner's decision to this Court.  She argues that the ALJ erred in four ways:  (1) failing to properly consider Edelman's fibromyalgia and cervical disc disorder, (2) improperly evaluating Edelman's credibility, (3) improperly rejecting the opinions of Edelman's treating physicians and (4) asking an improper question to the vocational expert.  The Magistrate Judge found each argument unavailing and recommended that I affirm the Commissioner's decision.

## **STANDARD OF REVIEW**

A district court judge may refer an appeal of a decision of the Commissioner to a magistrate judge. See 28 U.S.C. § 636(b)(1).  Within ten days after being served a copy of the magistrate judge's Report and Recommendation, a party may file timely and specific objections thereto.  See 28 U.S.C. § 636(b)(1)(c).  In the event that objections are filed, 28 U.S.C.

§ 636(b)(1) requires a district court to "make a de novo determination of those portions of the [magistrate judge's] recommendations to which objection is made." It further allows the Court to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." Id..

The issue to be addressed on appeal from a denial of benefits is whether the Commissioner's decisions are supported by substantial evidence. See 42 U.S.C. § 405(g); see also Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). "It is less than a preponderance of the evidence but more than a mere scintilla." Jesurum v. Sec'y of U.S. Dept. of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995). "Overall, the substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999). Where the ALJ's factual findings are supported by substantial evidence, I am bound by them even if I would have reached different conclusions. See Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

In rendering a decision, the ALJ need not refer to every piece of evidence in the record. See id. at 42. But the ALJ must provide "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

**DISCUSSION**

I.   Residual Functional Capacity

Edelman objects to the Magistrate Judge's recommendation that the ALJ's RFC determination was supported by substantial evidence. Edelman points to the following evidence to support her argument. First, several doctors have diagnosed Edelman with cervical disc problems, fibromyalgia or both. Dr. Charles Ludivico diagnosed her with fibromyalgia and cervical degenerative disc disease on June 24, 1999. Tr. 694. On September 10, 1999, Dr. Charles Bruno agreed that Edelman had fibromyalgia. Tr. 763-64. In March of 2000, Dr. Dane Wukich diagnosed Edelman with a cervical disc herniation and fibromyalgia. Tr. 935. Dr Wukich also testified at Edelman's worker's compensation hearing that he deemed Edelman's complaints of pain credible. Tr. 969.

Second, Edelman has been deemed capable of less than sedentary, full-time work. On January 13, 1998, Dr. Bruno considered Edelman capable of performing a job that required no lifting of more than ten pounds, for no more than four hours per day. Tr. 773. On May 1, 1999, Dr. Ludivico deemed Edelman capable of only part-time, sedentary work. Tr. 705. In the course of her worker's compensation claim, Edelman underwent a functional capacity evaluation and on August 5, 1999 she was deemed "below sedentary and . . . not feasible for employment." Tr. 728.

Third, Dr. Wukich opined that MRI results showed that Edelman's cervical disc problems did not improve between 1997 and 1999. Tr. 931. Dr. Raul Abad expressed the same opinion. Tr. 722.

Fourth, Edelman maintains that medical treatment of her conditions was not successful.

She points to notes summarizing her physical therapy sessions and stating that treatments in 1997 and 1999 did not improve her condition. See Tr. 673 & 680. Edelman also avers that physician notes suggest that ice did not alleviate her pain, but her physician's comments on this point are ambiguous. See Tr. 769 ("She feels some relief with ice to the back of her neck. The only time she feels any relief is by laying [sic] down on a recliner."). Last, Edelman notes that she underwent cervical fusion surgery in June 2007, Tr. 476-77, but continued to feel pain afterward. Tr. 1013. Edelman's physician noted that her pain "seem[ed] to be muscular." Tr. 1015.

Finally, Edelman argues that the ALJ ignored evidence that her pain limits her daily activities. She avers that her pain prevents her from performing daily tasks without the help of her boyfriend, requires her to lie flat for several hours at a time and precludes her from being able to shower in the evening. The medical records to which Edelman cites to support these assertions, Tr. 1065-75, are largely illegible and to the extent they are legible, they do not support Edelman's assertions. See Tr. 1067 (noting a urinary tract infection); 1069 (same); 1071 (noting night sweats); 1073 (noting panic attacks). Elsewhere in the record, Edelman herself has represented that she feels pain after performing certain daily activities. See Tr. 165-74.

Despite these objections, I agree with the Magistrate Judge that substantial evidence supports the ALJ's RFC determination. Several comparatively recent medical records state that Edelman has a full range of motion in her neck. See Tr. 1079 (September 27, 2005 exam), 1084 (October 18, 2005); 1087 (December 19, 2005); 1089 (January 30, 2006); 1095 (June 12, 2006); 1098 (June 14, 2006); 1101 (September 29, 2006); 1103 (November 15, 2006). Prior to Edelman's cervical fusion surgery in June of 2007, her physician noted that she had experienced "sporadic flare-ups mainly in the form of left-sided neck and shoulder pain," but that her

5

symptoms were "fairly well controlled with conservative treatments." Tr. 476. Edelman "recovered well" from her surgery and to the to the extent she continued to feel pain, her physician deemed the pain muscular in nature. Tr. 1015. In another follow-up exam, Edelman's physician described her as "neurologically strong." Tr. 461. Moreover, after a physical exam on October 23, 2007, Edelman was deemed to have normal gait and posture and full strength in her biceps, triceps and hands. Tr. 458. The only area where Edelman had less than full strength was in her shoulders, where her strength was rated "4+/5." Id.

A physical residual functional capacity evaluation by Dr. Gerald Gryczko on May 8, 2007 noted that Edelman could frequently lift or carry ten pounds at a time. Tr. 342. Dr. Gryczko also noted that Edelman could sit for about six hours and stand for about six hours in an eight-hour workday, assuming she can take normal breaks over the course of the day. Id.

Moreover, Edelman reported that she is able to carry out several daily activities, including feeding her cats, preparing dinner, showering, driving her car, mowing her lawn using a riding mower, using a vacuum cleaner and going to the grocery store. Tr. 165-74. Edelman reports, however, that pain limits her ability to perform these activities for extended periods of time. For example, she states that she cannot use her riding mower for more than an hour at a time and that she feels pain after fifteen minutes of vacuuming. Tr. 166.

The record contains evidence that supports Edelman's claim that fibromyalgia causes her pain. Contrary to her objections to the Magistrate Judge's Report & Recommendation, however, the ALJ did not reject Edelman's fibromyalgia diagnosis. In concluding that Edelman suffered from severe impairments, the ALJ noted that she suffered from "(possible) fibromyalgia." Tr. 11. The ALJ, however, concluded that Edelman's fibromyalgia was not a disabling impairment.

Tr. 13-22.  The question before me now is whether substantial evidence supports the ALJ's RFC determination.  A diagnosis of fibromyalgia does not automatically render a person unable to perform jobs that exist in significant numbers in the national economy.  See Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 534 (1st Cir 1988).  The Court of Appeals has affirmed the denial of Social Security disability benefits to a person who suffered from fibromyalgia and other conditions where the ALJ determined that the applicant nonetheless had the RFC to perform jobs that involved sedentary work with some modifications.  See Holiday v. Barnhart, 76 Fed. App'x 479, 481-82 (3d Cir. 2003).  Here, substantial evidence supports the ALJ's determination that Edelman is able to perform certain kinds of light work despite her impairments.  Accordingly, I will overrule Edelman's objections to the Magistrate Judge's recommendation that I affirm the ALJ's RFC determination.

II.     Edelman's Credibility

Edelman next argues that the ALJ improperly evaluated her credibility.  After determining that Edelman's RFC allowed her to perform certain types of light work, the ALJ noted that "the claimant's statements and those of her boyfriend concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  Tr. 18.  Edelman argues that the ALJ's credibility determination is erroneous in light of the medical evidence that supported her testimony.

Federal regulations provide that an ALJ shall "evaluate [a claimant's] statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether [he is] disabled."  20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4).  An ALJ shall also

"consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence."  Id.  The Court of Appeals has explained that the regulations "obviously require[] the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."  Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  "The ALJ has discretion to evaluate the credibility of a claimant and . . . arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged . . . ."  Cerrato v. Comm'r of Soc. Sec., 386 Fed. App'x 283, 286 (3d Cir. 2010) (internal quotation marks omitted).

In light of the evidence I previously discussed that supports the ALJ's RFC determination, I find that the ALJ did not err in deeming some of Edelman's statements about her physical limitations not credible.  I will therefore overrule Edelman's objection to the Magistrate Judge's conclusion that the ALJ appropriately discounted Edelman's credibility.

III.   Evaluation of Medical Opinions

Edelman next argues that the ALJ improperly rejected the opinions of her treating physicians. "[A] treating physician's report must be accorded great weight, especially when their opinion reflects expert judgment based upon continuing observation of the patient's condition over a prolonged period of time."  Allen v. Bowen, 881 F.2d 37, 41 (3d Cir. 1989) (internal quotation marks omitted).  Edelman contends that the ALJ rejected the opinion of Dr. Wukich. Edelman points to Dr. Wukich's deposition testimony in 2000 that he believed Edelman's complaints of pain.  See Tr. 969.  In that same deposition, however, Dr. Wukich opined that Edelman could work "in a sedentary capacity."  Tr. 967.  This is consistent with the ALJ's

8

determination that Edelman could perform light work. Similarly, Edelman cites to Dr. Bruno's 2000 deposition testimony that Edelman could not return to her former job as a waitress. See Tr. 839 & 847. The ALJ, however, agreed that Edelman could not be a waitress.

Edelman also argues that the ALJ improperly rejected the opinion of Cynthia Himpler, a certified registered nurse practitioner. Although a CRNP cannot establish a medically determinable impairment, 20 C.F.R. §§ 404.1513(a) & 416.913(a), Dr. David Schwendeman submitted a letter to Edelman's counsel endorsing Himpler's assessment. See Tr. 1169-70. On December 1, 2008, Himpler completed a "mental impairment questionnaire" that includes an assessment of whether Edelman has various mental abilities needed for employment. With respect to each mental ability listed on the questionnaire, Himpler noted that Edelman was either "unable to meet competitive standards" or had "no useful ability to function." Tr. 1140-41. On the same questionnaire, however, Himpler noted that Edelman has a Global Assessment of Functioning score of 55. Tr. 1137. This score is associated with only "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). Moreover, Dr. Clovia Walters, a psychiatrist, opined on April 9, 2007 that Edelman had only moderate or slight limitations on her ability to perform essential job functions. See Tr. 286-87. I therefore agree with the Magistrate Judge that the ALJ did not improperly reject the opinions of Edelman's physicians.

IV.     Hypothetical Question to the Vocational Expert

Finally, Edelman argues that the ALJ's hypothetical question for the vocational expert improperly omitted evidence concerning Edelman's limitations. The ALJ asked the vocational expert to imagine a person who "is capable of performing light and sedentary work that does not

involve detailed instructions, is confined to routine, one to two-step tasks with few work changes and no exposure to chemicals." Tr. 66.  The ALJ then asked the vocational expert whether there are jobs that such a person can perform.  Id.  In other words, the ALJ asked the vocational expert whether a person with Edelman's RFC can perform jobs that exist in the national economy.  As I have already determined that the ALJ's RFC determination was supported by substantial evidence, I conclude that the ALJ did not err by basing her hypothetical question on that RFC.  See Rutherford v. Barnhart, 399 F.3d 546, 554 n.8 (3d Cir. 2005) (noting that "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself").  I will therefore overrule Edelman's objection.

       An appropriate Order follows.